ST. LOUIS–SOUTHWESTERN RAILWAY
COMPANY, a Corporation,
Plaintiff-Appellant,

v.

Dean COOPER, Ex-Officio Collector of Stod-
dard County, Missouri, Defend-
ant-Respondent,

Reorganized School District No. R–I et al.,
Intervenors-Respondents.

MISSOURI PACIFIC RAILROAD COMPA-
NY, a Corporation, Plaintiff-Appellant,

v.

Dean COOPER, Ex-Officio Collector of Stod-
dard County, Missouri, Defendant-
Respondent,

Reorganized School District No. R–I et al.,
Intervenors-Respondents.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Corporation, Plain-
tiff-Appellant,

v.

Dean COOPER, Ex-Officio Collector of Stod-
dard County, Missouri, Defend-
ant-Respondent,

Reorganized School District No. R–I et al.,
Intervenors-Respondents.

Nos. 57086, 57087 and 57106.

Supreme Court of Missouri,
Division No. 1.

June 11, 1973.

Motion for Rehearing or to Transfer to
Court En Banc Denied

July 16, 1973.

------

Harry C. Blanton, David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, for plaintiffs-appellants Missouri Pacific R. Co., St. Louis Southwestern Ry. Co.

James E. Reeves, Ward & Reeves, Caruthersville, John F. McCartney, St. Louis, for plaintiff-appellant St. Louis-San Francisco Ry. Co.

John McCullough, St. Louis, of counsel.

Powell, Ringer & Baker, Dexter, for intervenors-respondents.

Paul McGhee, Dexter, for defendant-respondent.

HOLMAN, Presiding Judge.

Action to recover school taxes paid by railroads in Stoddard County. The trial court denied relief. Plaintiffs appealed by notices of appeal filed prior to January 1, 1972. We reverse and remand with directions.

An opinion previously prepared in this case was not adopted and the case was reassigned to the writer. Portions of that opinion are here adopted without the use of quotation marks.

The school tax rate on utility distributable property for 1969 in Stoddard County, computed according to § 151.150, RSMo 1969, was $3.32 per $100 assessed valuation. Contending that, in the computation of such rate, school districts within the county had failed to comply with § 137.073, RSMo 1969, requiring a decrease in levy when assessed valuation increases more than 10% over the prior year, the St. Louis-Southwestern Railway Company ("Cotton Belt"), Missouri Pacific Railroad Company ("Missouri Pacific"), and St. Louis-San Francisco Railway Company ("Frisco") paid under protest the amount of school tax levied against their property in Stoddard County which they claimed to be excessive by reason of the failure to adjust levies. Cotton Belt and Missouri Pacific asserted that the correct rate should have been $3.08 per $100. Cotton Belt protested $5,122.65 of its $70,863.19 school tax bill, and Missouri Pacific $2,263.54 of its $31,312.26 school taxes. Frisco claimed that the correct rate should have been $3.00 per $100 and protested $918.34 of its $9,527.74 school tax. Each filed a separate action for recovery of the amount paid under protest. Seven of the ten school districts within the county intervened in the actions. The collector and the intervenors asserted the unconstitutionality of § 137.073, supra, on various grounds and also defended the tax levies on the grounds that the tax rates had been adjusted so that the amended rates produced substantially the same income as the originally filed rates. They also asserted estoppel and waiver on the grounds that other taxing authorities within the county had failed to adjust their levies, but the plaintiffs paid the taxes levied by them without objection.

The trial court sustained the constitutional objections and also found that the amended rates on which the $3.32 utility rate was based would have produced a 7.6% increase in revenue over return figured on the original rates; that this was less than a 9% increase in valuation, requiring no adjustment of rates, would have produced; that the districts had, therefore, substantially met the requirement of § 137.073, supra. The trial court further found that uncertainties in the state financing of the school foundation program for 1969–1970 justified the refusal of the districts to reduce their levies further. The trial court also found for the defendant and intervenors on the estoppel and waiver issue.

The total assessed value of real estate in Stoddard County for 1968 was $30,798,695. On the basis of such valuation, each of the ten school districts in Stoddard County, in compliance with § 164.011, RSMo 1969, filed estimates of its financial requirements for the year beginning July 1, 1969, and of the tax levy to produce the required revenue. The rates proposed would have produced $1,346,912 on a total assessed valuation of $42,853,034. The average rate was $3.43.

When the 1969 assessment procedure had been completed, the real estate assessed valuation was $35,922,622, an increase of 16.63% over the 1968 valuation.

Section 137.073, supra, provides:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those

rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

When the 1969 assessment had been completed, the following reductions in proposed levies were made, resulting in an increase in revenue over the original estimates as shown below:

| District | Original | Adjusted | Increased Revenue | Percentage of Increase |
|---|---|---|---|---|
| Richland | 3.82 | 3.50 | $13,152 | 5.3 |
| Bell City | 3.70 | 3.50 | 24,741 | 19.4 |
| *Advance | 3.50 | 3.30 | 4,180 | 4.0 |
| Dexter | 3.82 | 3.65 | 24,697 | 6.4 |
| *Bernie | 3.40 | 3.25 | 12,250 | 8.0 |
| *Twin Rivers | 3.15 | 3.05 | 1,867 | 20.1 |

The following districts made no change in the levies originally proposed:

| District | Original | | Increased Revenue | Percentage of Increase |
|---|---|---|---|---|
| * Puxico | 3.15 | | 12,220 | 12.5 |
| Bloomfield | 3.50 | | 19,708 | 12.1 |
| *Zalma | 3.25 | | 15 | 18.3 |
| *New Madrid | 3.00 | | 12,267 | 21.6 |

* Multi-county district

The total Stoddard County school tax revenue on the basis of the adjusted rates would have been $1,472,099. The average rate was $3.32. The adjusted rates would have produced $125,187, or 9.3% in excess of the amounts required according to the original estimates, based on the 1968 valuation.

The first finding of the trial court attacked on this appeal is one in which the court found § 137.073, supra, unconstitutional because it does not deal with multi-county districts and therefore requires a decrease in the tax rate by a school district in a county in which there has been a 10% increase in valuation, but does not require such a school district which lies in more than one county to reduce its rate in the other county which did not have such an increase. The trial court held that this produced a violation of Mo.Const. Art. X, § 3, which requires uniformity of taxes within the territorial limits of the taxing authority.

■ Assuming, without so holding, since no such question has been raised, that the collector and intervening school districts have any standing to raise the objection based upon a provision intended for the benefit of taxpayers, the practical construction here given by multi-county districts which did adjust rates demonstrates that the statute is capable of being applied without giving rise to the consequences which the trial court found productive of the constitutional infirmity. Advance, Bernie and Twin Rivers simply applied the adjusted rate to the entire district, the portions in Stoddard County and the portions in other counties. Such action demonstrates that the statute may be so construed and applied and precludes a finding of unconstitutionality on the grounds relied upon by the trial court. State ex inf. Dalton v. Metropolitan St. Louis Sewer District, 275 S.W.2d 225, 234 [22–25] (Mo. banc, 1955).

The trial court also found that, by prohibiting the levying of a tax rate which had been approved by the voters, § 137.073, supra, conflicted with Mo.Const. Art. X, § 11(c). § 11(c) grants authority to the voters to authorize an increase of tax rates above those limited by § 11(b).

■ That § 11(c) does not compel the imposition of a rate of taxation which had received voter approval is now clear in view of the adoption in 1970 of a new § 11(c) which contains the express provision: " * * * provided that any board of education may levy a lower tax rate than approved by the voters as authorized by any provision of this section; * * *." With or without such provision, there is nothing found in § 11(c) which inhibits a legislative enactment such as § 137.073, supra, or prevents its application to a rate of taxation which has received prior voter approval. The process of levying taxes for school purposes involves the estimating of the needs of the district for the ensuing year and a determination of the rate of taxation to be imposed before the assessed valuation for the district may have been finally determined. § 164.011, § 138.010,

RSMo 1969. § 11(c) which is in fact a buffer designed to protect taxpayers against excessive taxes should not be construed to require excessive taxes to be levied when the original rate is computed on the basis of an assessed valuation which is later substantially increased. The vital fact is the amount of revenue which will be produced as it relates to the projected requirements of the school district. § 11(c) does speak in terms of rate of taxation, but its language should not receive such a rigid application that the revenue produced becomes a secondary consideration. The trial court's finding of unconstitutionality on this ground was erroneous.

The trial court also found that § 137.073, supra, suspended the power of school districts to levy the tax approved by the voters in violation of Mo.Const. Art. X, § 2, prohibiting the surrendering, suspending or contracting away the power of taxation, except as authorized by the constitution. The grant in § 11(c) of Art. X, supra, of power to the people to approve tax rates is in no sense an absolute power. § 11(c) provides "that the rates herein fixed, and the amounts by which they may be increased, may be further limited by law; * * *." § 137.073, supra, is a legislative limitation upon the amount authorized by the people whenever the rate so authorized would produce excessive revenue. No surrender, suspension, or contracting away of the power of taxation within the meaning of § 2 of Art. X, supra, is involved.

The trial court made a further finding of unconstitutionality based upon its construction of § 137.073, supra, as precluding consideration being given, in adjusting the school levies, to the deduction from basic state aid, under § 163.031, subd. 2, RSMo 1969, which will follow the reduction of the levy for teachers and incidental fund by reason of the increased valuation. This construction is erroneous. § 137.073, supra, requires school districts, in adjusting their levies, to do so to produce substantially the same amount of taxes as previously estimated for the original levy,

" * * * plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation." This provision would include any reduction in state aid which would flow, under § 163.031, subd. 2, supra, from the reduction of levies under § 137.-073, supra. Missouri Pacific Railroad Company v. Kuehle, 482 S.W.2d 505, 507–509 (Mo., 1972).

The trial court's constitutional determination was based upon an erroneous construction of § 137.073, supra, and need be given no further consideration.

■ The trial court's final constitutional ruling was that § 137.073, supra, is void because it establishes no guidelines for determination of the meaning of the phrase "substantially the same." In Missouri Pacific Railroad Company v. Kuehle, supra, this court stated (482 S.W.2d 509 [3–6]) :

" * * * We have the view that the words 'substantially the same amount' were used in § 137.073 with the recognition that a rate which would yield precisely the same amount would be virtually impossible to determine. However, the purpose of the section is obviously to prevent 'windfalls' in school taxes to the school districts merely because the assessed valuation of the real property in a county increases. The legislature recognized (in the emergency clause of § 137.073 which made the Act effective upon passage) that such an increase could result in hardship for the taxpayers."

The construction there laid down affords a sufficient guide to the application of § 137.073, supra. The finding of unconstitutionality for vagueness was erroneous.

In addition to its findings on the constitutional issues, the court made further findings of fact and law which formed the basis for denial of relief to plaintiffs below.

The trial court found that, in view of the uncertainty regarding the state aid which would be received under the new state program which became effective July 15, 1969, and which was in fact funded only 77.721% for the 1969–1970 school year, the school districts on the whole made a good faith effort to comply with § 137.073, supra, and did not act fraudulently or in bad faith.

Appellants disavow any reliance on fraud or bad faith on the part of the school districts and their petitions did not assert any such misconduct. Consequently a finding of lack of fraud or bad faith relates to no issue tendered to the trial court. The further finding that the "assessments" made by the school districts "were not so palpably exorbitant and excessive as to amount to constructive fraud," likewise answers no issue raised in the trial court.

■ The parties did stipulate that the school foundation program was funded only for 77.721% of the amount authorized for the 1969–1970 school year. The new program had become effective July 15, 1969. Laws of Mo., 1969, p. 268. The uncertainty about the effect of the new law was a factor which the trial court properly considered in determining whether or not the districts had met the requirements of § 137.073, supra. Appellants' briefs assert that the districts actually received $70,560 more in state aid than they had expected at the time their estimates were filed with the county clerk. No record reference for this statement is made in the briefs and examination of the record discloses no basis for such statement. It should be noted, however, that the respondents do not contend that the districts actually received any less in state aid than had been anticipated at the time they formulated their estimates.

■ On the issue of estoppel and waiver, based upon the failure of appellants to object to the noncompliance with § 137.073, supra, by other Stoddard County taxing authorities, the trial court's finding was erroneous, in view of the provision of § 139.-031 RSMo 1969, that: "Any taxpayer may protest all or any part of any taxes as-

sessed against him, except taxes collected by the director of revenue of Missouri."

Principles of waiver or estoppel, in any event, would not defeat appellants' claims. The only waiver involved would apply to the taxes imposed by other taxing authorities. There is no showing that the school districts took any action in reliance upon appellants' failure to protest other taxes. Such reliance would be required in order to give rise to any question of estoppel. 28 Am.Jur.2d, Estoppel and Waiver, § 35, p. 641 (1966).

The trial court found that because the reductions which were made produced an over-all increase in revenue for all of the districts from all of their territory, inside and outside Stoddard County, of only 7.-6%, § 137.073, supra, had been substantially complied with. The court reasoned that a 9% increase in assessed valuation would have required no rate adjustment, but would have potentially produced more revenue than would have been raised by the adjusted levies.

■ The reasoning of the trial court is not sound and must be rejected because it fails to take into consideration the specific requirements of § 137.073. It would appear to have been the theory of the trial court that the statute requires a reduction of the levy only to the extent that it will produce less than a 10% increase over the amount anticipated from the original levy. There is nothing in the statute to support that view. The general assembly fixed the amount of increase in valuation which would activate the required reduction at 10% or more. It did not provide, however, that the levy need only be adjusted so that the revenue produced would be any amount which would not be equivalent to a 10% increase over the amount previously estimated. It required a reduction so as to produce "substantially the same amount of taxes as previously estimated to be produced by the original levy." As indicated, this point is ruled adversely to respondents.

■ Our final task is to determine whether the ultimate levies used by the ten districts constituted a compliance with the requirements of § 137.073. As shown by the foregoing table, six of the districts did make a reduction in their proposed rates. After those adjustments, there remained an increase in revenue over the original estimates. The increases ranged from 4.0% to 20.1%. Four of the districts made no reduction in the levies originally proposed. In those districts the increase of revenue over the original estimate ranged from 12.-1% to 21.6%. The average rate finally adopted was $3.32 which produced in taxes from Stoddard County $125,187 ($200,000 from the entire area of the districts), or 9.3% in excess of that required according to the original estimates based on the 1968 valuations.

■■ We have concluded that the districts did not comply with the mandate of the statute. The meaning of the phrase "substantially the same" is well known. "Substantially," as the word is used in the statute, is synonymous with "practically", "nearly", "almost", "essentially" and "virtually." The levies adopted, which produced an increase of 9% in revenue, obviously cannot be said to have produced almost the same amount of revenue as had been originally estimated. And, we do not think that the districts were reasonably justified in fixing the otherwise excessive rates by reason of the uncertainty as to the effect of the new school foundation program for the 1969–1970 school year. It is true that a new state aid statute became effective on July 15, 1969, and that the program was only 77.721% funded for the year in question. However, it is well known that it had been the policy of this state to increase the amount of state aid to schools for a number of years prior to that time; hence, we hold that the districts could not reasonably have feared a decrease in the amounts to be received under the new program.

As indicated, Missouri Pacific and Cotton Belt asserted that the correct average rate should have been $3.08 and protested payment accordingly. Even this rate would have produced approximately $75,000 in excess of the amount previously estimated to be produced by the original levy. Frisco suggested that the correct rate should have been $3.00 and protested payment on that basis. While that rate would have produced an amount much nearer the amount of the original estimates, it did exceed such amount. We therefore conclude, and accordingly rule, that the rates suggested by plaintiffs would have produced sufficient revenue for the districts and at the same time would have met the requirements of § 137.073.

The judgments are reversed and the causes remanded with directions to enter judgments for plaintiffs for the amounts of taxes they paid under protest.

All concur.