MISSOURI PACIFIC RAILROAD COMPANY et al., Plaintiffs-Appellants,

v.

J. J. JONES et al., Defendants-Respondents-Cross-Appellants,

Cass County Reorganized School District R–I et al., Intervenors-Cross-Appellants.

No. 59122.

Supreme Court of Missouri, Division No. 1.

Dec. 21, 1976.

**542**

Kent Snapp, James M. Beck, Johnson, Lucas, Bush & Snapp, Kansas City, for Missouri Pacific Railroad Co.

Robert D. Youle, Gary S. Dyer, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, for Kansas City Southern Railway Co.

Donald C. Bollard, III, Deacy & Deacy, Kansas City, for St. Louis-San Francisco Railway Co.

Judith Paxton Rea, Kansas City, for Missouri Public Service Co.

Clarence A. Conoley, Kansas City, for Panhandle Eastern Pipe Line Co.

David M. Claycomb, James, Odegard & Millert, Kansas City, for Chicago, Rock Island & Pacific Railroad Co.

F. Michael Seltzer, Kansas City, for Kansas City Power & Light Co.

Lex A. Passman, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for United Telephone Co. of Missouri.

Jack C. Lorenz, St. Louis, James E. Taylor, Kansas City, for Southwestern Bell.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for intervenors-cross appellants.

Joseph A. Hamilton, Harrisonville, for defendants-cross appellants.

William C. Paxton, Paxton, Stewart & Sperry, A Professional Corp., Independence, Donald C. Earnshaw, Lee's Summit, for intervenors-cross appellants, Jackson County Reorganized School District R–VII (Lee's Summit) and Jackson County Consolidated School District VI (Lone Jack).

BARDGETT, Judge.

This case originated as a suit in the circuit court of Cass County by plaintiffs-appellants, nine regulated utility companies, to recover 1972 school taxes paid under protest. Defendants are J. J. Jones, the former treasurer and ex officio collector of Cass County whose term of office expired December 31, 1972, and Benny Odom, the collector of Cass County whose term of office began on January 1, 1973. Plaintiffs filed separate suits pursuant to Section 139.031, RSMo 1969.[1] All cases were consolidated for trial and a single judgment was rendered.

Intervenors are fifteen school districts, eight located wholly within Cass County (single-county districts), and seven located partly in Cass County and partly in other counties (multi-county districts). Jurisdiction is in this court pursuant to Art. V, Sec. 3, Mo.Const., because the appeal involves construction of a state revenue law—Section 137.073, RSMo 1969.

The taxes involved are those which were levied against the "distributable property" of the nine regulated utilities. The "dis-

1. All citations are to RSMo 1969 unless otherwise indicated.

tributable property" of regulated utilities is assessed on a statewide basis by the state tax commission pursuant to Section 151.060. That statewide assessment is then allocated by the state tax commission among the counties in accordance with Section 151.080. The local school taxes were levied against the "distributable property" of plaintiffs pursuant to Section 151.150, which requires that the separate levies of each school district which lies wholly or partly within a county be averaged to arrive at an average rate of school levy within the county. This average rate of school levy was then charged against the portion of each utility's "distributable property" allocated to the county.

Each of the fifteen school districts adopted an original rate of levy for 1972 based upon the 1971 assessed valuation of real estate in the district and estimates of the district's financial requirements. These levies were certified to the county collector of Cass County. The average rate of levy for the original figures submitted was $4.23 per $100 valuation. The final assessed value of real property in Cass County for the year 1971 was $44,188,597 and for the year 1972 was $52,021,187. All parties have stipulated that this ten percent increase in assessed valuation of real property in Cass County in 1972 "triggered" Section 137.073, which provides:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten per cent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be

required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

In order to comply with the statute, twelve of the fifteen school districts revised their rate of levy downward. A new average rate of levy was computed using the twelve new rates and three old rates. The new average rate of levy was $4.09 per $100 valuation. This average school tax levy was extended on the tax rolls of Cass County and paid by the utilities with portions of the tax paid under protest.

On May 9, 1975, the trial court entered judgment in which it found that generally each of the plaintiffs had properly paid the contested taxes under protest and had properly instituted action to recover those taxes and that the average rate of levy of $4.09 per $100 valuation was not proper. The court determined that an average rate of levy of $3.91 per $100 valuation to be proper and judgment was entered in favor of each plaintiff for the difference between tax actually paid and tax due under the court's formula.

In computing tax actually due, the trial court found that in multi-county school districts only the increase in assessment in the "triggering county" (Cass County) need be

considered because it interpreted Section 137.073 to mean that the ten percent plus increase in Cass County does not automatically trigger Section 137.073 in adjoining counties where a portion of the school district is located and where the assessed valuation was not increased by as much as ten percent. Plaintiffs contend that the ten percent increase in valuation in Cass County triggered Section 137.073 as to all counties in a multi-county school district. Using this rationale, the plaintiffs proposed an average rate of levy of $3.83 per $100 valuation.

These two interpretations are expressed best by using a series of hypothetical illustrations:

Assume school district A needs $10,000 in tax revenues in 1971 and the counties which compose district A have a total assessed valuation of $400,000 in 1971. The district is composed of parts of four counties whose individual valuations for 1971 each equal $100,000. The tax rate needed to produce $10,000 is $2.50 per hundred dollars assessed valuation. The following chart illustrates the tax revenues of school district A for 1971:

| | Assessed Valuation 1971 | Rate of Tax Levy in 1971 Required to raise $10,000 | Amount of Revenue Produced |
|---|---|---|---|
| County 1 | $100,000 | $2.50/$100 | $ 2,500 |
| County 2 | 100,000 | 2.50/$100 | 2,500 |
| County 3 | 100,000 | 2.50/$100 | 2,500 |
| County 4 | 100,000 | 2.50/$100 | 2,500 |
| | | Total Revenue | $ 10,000 |

Assume next that in 1972 the assessed valuation in County 1 increases to $200,000 (a 100 percent increase), County 2 increases to $109,000 (a 9 percent increase), County 3 increases to $108,000 (an 8 percent increase), and County 4 increases to $108,000 (an 8 percent increase). The 100 percent increase in County 1 triggers Section 137.073 because it is an increase in assessed valuation of 10 percent or more. The statute requires a reduction in the tax levy so as to raise substantially the same amount of money in 1972 as would have been raised by the original levy on the final 1971 assessed valuation.

According to the trial court the statute is only triggered in County 1 and not in Counties 2, 3, and 4. The court would figure the new tax levy by adding the 1972 valuation of County 1 ($200,000) to the 1971 valuations of County 2 ($100,000), County 3 ($100,000) and County 4 ($100,000) to come up with the total school district A's valuation of $500,000 from which to figure a new tax levy to raise the $10,000 in needed revenue. Using this figure the new tax levy would therefore be $2.00 per $100 assessed valuation. According to the trial court's formula, this $2.00 rate is then levied against the total 1972 assessed valuation of $525,000 for school district A.

The following chart illustrates the tax revenues of school district A for 1972:

| | Assessed Valuation 1972 | Rate of Tax Levy in 1972 required to raise $10,000 | Amount of Revenue Produced |
|---|---|---|---|
| County 1 | $200,000 | $ 2.00/$100 | $ 4,000 |
| County 2 | 109,000 | 2.00/$100 | 2,180 |
| County 3 | 108,000 | 2.00/$100 | 2,160 |
| County 4 | 108,000 | 2.00/$100 | 2,160 |
| | | Total Produced | $ 10,500 |

The formula used by the trial court produces in the second illustration $500 more than what is required by the school district. Stated in other terms, the people who live in school district A are required to pay more in taxes than what is needed by the district.

Using the rationale of the plaintiffs-appellants the correct method to figure the revised tax levy where one county has triggered Section 137.073 because of an increase in valuation of ten percent or more is to use the amount of the total 1972 district valuation of $525,000 as the base. Using $525,000 as the base, the tax levy needed to produce $10,000 is approximately $1.91.

The following chart illustrates the tax revenues of school district A for 1972 using $1.91 as the amount of tax levy per $100 assessed valuation:

| | Assessed Valuation 1972 | Rate of Tax Levy in 1972 Required to raise $10,000 | Amount of Revenue Produced |
|---|---|---|---|
| County 1 | $200,000 | $1.91/$100 | $ 3,820.00 |
| County 2 | 109,000 | 1.91/$100 | 2,081.90 |
| County 3 | 108,000 | 1.91/$100 | 2,062.80 |
| County 4 | 108,000 | 1.91/$100 | 2,062.80 |
| | | Total Revenue | $ 10,027.50 |

Using this formula, substantially the same amount of revenue is produced in 1972 as was produced in 1972.

All parties appealed from the trial court's judgment. Plaintiffs-appellants appeal the judgment only as to five multi-county school districts (Drexel, Archie, Kingsville, Lee's Summit, and Lone Jack). Defendants-appellants and intervenors-appellants appeal the entire judgment of the trial court.

The following ruling by the trial court is the basis for the utilities' appeal:

". . . In computing the Multi-County District revised levy, the amount of the revision or adjustment must be that amount required to raise substantially the same amount of money as the original levy would have raised, taking into account only the increase in the assessment in Cass County, the only County in which an increase in excess of ten percent (10%) occurred. The Court finds that a uniform district-wide levy must be assessed by the District throughout the District, but the increase in the Multi-County Districts' assessed valuation which occurred in Counties adjacent to Cass County need not be considered by those Districts in arriving at the revised levy. The 10% plus increase in assessed valuation in Cass County does not trigger the Statute as to Jackson County or other County areas. The Court does therefore find against plaintiffs on this issue insofar as plaintiffs contend that the revised levy should be adjusted sufficiently to adjust for increases in assessed valuation which occurred in Counties other than Cass County, but in which a 10% increase in such adjacent County did not occur."

Plaintiffs-appellants contend that the average school tax levy of $3.91 per $100 valuation determined by the trial court is excessive and illegal because it incorrectly applies Section 137.073 to the five multi-county school districts and also because it constitutes a misinterpretation of the legislative intent as evidenced in Section 137.-073. Plaintiffs-appellants contend that 137.073 requires the application of a single mathematical formula to be used in both single-county and multi-county districts. The single mathematical procedure the utilities contend for is that the total assessed valuation in the entire school district must be used as the tax base regardless of whether the school district is a single-coun-

ty district or a multi-county district. The trial court held that the full increased assessed valuation in a single-county district would be the base for that district but that in multi-county districts the district should utilize as the base the increased assessed valuation in the triggering county but could ignore the increased valuation in the other counties if the increases were less than 10%. The utilities further contend that the trial court's use of one formula in single-county districts and another formula in multi-county districts violates Art. X, Sec. 3, Mo. Const., in that it allows nonuniform taxes on a class of subjects within the territorial limits of the taxing authority.

This court has construed Section 137.073 three times. In *Missouri Pacific Railroad Company v. Kuehle*, 482 S.W.2d 505 (Mo. 1972), three utilities filed suit against the county tax collector alleging excess school tax payments. The school districts intervened. In deciding whether the original rate and the revised rate produced "substantially the same amount of taxes", this court looked to the intent of the legislature as expressed in the emergency clause of the original act, which clause provides:

> "Emergency.—Because the state tax commission has announced that it is going to order a large increase in the assessed valuations of property in many counties in this state which will result in hardship for the citizens of the state unless the rate of levies are correspondingly reduced, and because the present law does not adequately protect the people of this state, and because this act is necessary for the immediate preservation of the public peace, health and safety of the inhabitants of this state, an emergency exists within the meaning of the constitution, and this act shall be in full force and effect from and after its passage and approval." Laws of Missouri 1955, p. 836.

The court in *Kuehle* found that the purpose of Section 137.073 was to prevent windfalls in school taxes to the school districts merely because the assessed valuation of the real property in a county increases.

The court went on to construe the statute strictly in favor of the taxpayer finding that the revised rate of levy (which produced $80,000 in excess of the original rate) did not comply with 137.073 in that the revised levy did not produce substantially the same amount of taxes.

In *St. Louis-Southwestern Railway Company v. Cooper*, 496 S.W.2d 836 (Mo.1973), the constitutionality of Section 137.073 was attacked by defendant-respondent collector of Stoddard County and by intervenors school districts located partly or wholly within Stoddard County. Of interest in this case was the allegation that Section 137.073 was unconstitutional because it did not deal with multi-county school districts and therefore required a decrease in tax rate by a school district in a county in which there had been a 10% increase in valuation but did not require a school district which was located in more than one county to reduce its rate in the other county which did not have a 10% increase. The trial court had found this produced a violation of Art. X, Sec. 3, Mo.Const., which requires uniformity of taxes within the territorial limits of the taxing authority.

On appeal to this court, Holman, P. J., said at 840, in answer to the above contention,

> ". . . the practical construction here given by multi-county districts which did adjust rates demonstrates that the statute is capable of being applied without giving rise to the consequences which the trial court found productive of the constitutional infirmity. Advance Bernie and Twin Rivers [school districts] simply applied the adjusted rate to the entire district, the portions in Stoddard County and the portions in other counties. Such action demonstrates that the statute may be so construed and applied and precludes a finding of unconstitutionality on the grounds relied upon by the trial court. *State ex inf. Dalton v. Metropolitan St. Louis Sewer District*, 275 S.W.2d 225, 234[22–25] (Mo. banc, 1955)."

The "practical construction" set forth supra was followed by one of the multi-coun-

ty school districts in this case. The R–8 Sherwood School District of Cass County, lying also in Henry and Johnson Counties, timely filed with each of the three county clerks an estimate for an aggregate 1972 levy rate of $3.50 which estimate used the final assessed valuation for the *entire* district. Thereafter, a more than ten percent increase occurred in Cass County. The R–8 school district then lowered its aggregate 1972 levy to $3.45 which levy was based upon the aggregate 1972 final assessed valuation of the entire school district. The adjustment therefore took into account the increases in assessed valuation occurring in Henry and Johnson Counties even though such increases did not exceed ten percent in either of these counties. The result reached by that method accomplishes the declared purpose of Section 137.073 which is ". . to produce from *all* taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy." (Emphasis supplied.)

■ The issue relating to the formula to be used in arriving at the correct levy in a multi-county school district where the assessed valuation of real and personal property is increased over 10% in only one of the counties is the only point raised on plaintiffs' appeal. The court concludes that § 137.073 requires the school district to take into consideration the increased assessed valuation of all the property within the school district. Specifically, the school district must include in its base the increases in assessed valuation in all of the counties in which the school district lies and not just the county where the increase exceeds 10%. This method will produce the sum of money which the school district has declared that it needs for the ensuing year.

Defendants-intervenors also claim the trial court failed to take into consideration reduced tax receipts which would be lost by the school districts from state assessed utility distributable property. The real issue however is whether substantially the same amount of taxes previously estimated to be produced by the original levy will be pro-

duced from the revised and lowered school tax rate of levy.

In determining and certifying its original levy necessary to produce the tax revenues required to operate school districts, each district fixed a levy which would, when applied to its locally assessed property alone, produce the revenue needed. Utility property, which is assessed on a state-wide basis, is taxed according to Section 151.150. The utility property raises additional revenue over and above that amount certified to the county collector. When the rates of levy of each district was revised by the trial court it is true that less revenue was produced from utility taxes. However no credit is due on that decrease. This is so because Section 137.073 is not directed to the state assessed utility property. Section 137.073 requires only that substantially the same amount of taxes as were previously estimated to be produced by the original levy be produced by the revised levy. This original amount is not based on utility property and no decrease in taxes raised from utility property due to a revision of levies downward results in a tax credit. Utility property simply is not a factor in determining substantial compliance with Section 137.073.

Defendants-intervenors allege that the trial court erred by failing to consider the loss of state aid arising by reason of the increased assessed valuation. Section 137.073 provides in part, ". . . Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. . . ."

The evidence in this case shows that there was no reduction of state aid for the school year of 1972. The defendants-intervenors' claim is without merit. The trial

court was correct in ruling for the utilities on this point.

■ Defendants-intervenors next contend the trial court erred in failing to consider the budgeted assessed valuation figures used by the Belton, Raymore-Peculiar and Harrisonville school districts in arriving at the proper amended levy. These three school districts offered evidence that actual figures other than those filed as estimates with the county clerk were used in fixing their initial rate. The districts say that they purposefully based their rate of levy on a higher valuation than the 1971 valuation because they knew the valuations were going up for 1972. This had the effect of making their need for 1972 look lower than it actually was. This issue was met in *Missouri Pacific R. Co. v. Campbell*, 502 S.W.2d 354 (Mo.1973). This court said at 358–359:

"There was evidence offered by the intervenors to the effect that they contacted the assessor and obtained an estimate of the probable amount of increased assessment before preparing their budgets and took that into consideration in fixing their rates of levy. They say, therefore, that they did not receive an unexpected windfall and hence the reduction provision of the statute should not be applicable. We do not know whether the trial court considered that evidence in its decision because no statement of 'grounds for decision' was filed. As required by law, the districts filed a written estimate with the county clerk stating the amount of money needed for the ensuing year and the tax rate (based upon the assessed valuation for the prior year) that would be levied to produce that amount. The only way the districts could have accomplished the result they now say occurred is to have stated a smaller amount for their needs in the official estimate than the amount they considered actually necessary.

"Our view is that the foregoing evidence (even if assumed to be admissible) would not change the result we have reached. The districts should not be permitted to repudiate the amount of their needs as stated in their official estimates and to now state that their estimates were intentionally incorrect and based upon information not recognized by the various statutes involved. Such a procedure would not only be a violation of those statutes but would tend to emasculate the specific reduction provision of § 137.073 and place its enforcement on a tenuous and speculative basis."

Defendants-intervenors attempt to distinguish the above case on the basis that the 1972 assessed valuation had been filed before these districts fixed their initial rate of levy and because the evidence shows that the levies were based on lower assessed values than those reported by the assessor prior to that date. The court holds that the issue is controlled by *Campbell*, supra. The point is overruled.

Defendants-intervenors contend that five of the utilities failed to join the present county collector Benny Odom within 90 days after the date of protest as required by Section 139.031. The five utilities named are Kansas City Southern Railway Company, St. Louis-San Francisco Railway Company, United Telephone Company, Southwestern Bell Telephone Company and Panhandle Eastern Pipe Line Company.

Defendants-intervenors claim that, once the 90 days had run, it was too late for the five utilities to add Benny Odom as a defendant. As pointed out in plaintiffs' responsive brief and the petition of Southern Railway, that utility did join Benny Odom in its original petition. The other four utilities were granted leave to amend by substitution after the 90-day period. Plaintiffs-appellants rely on civil rule 52.13(d) and claim that the amendment relates back to the date of the original pleading. Rule 52.13(d) provides:

"(d) *Public Officers*—Death or Separation from Office. When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a par-

ty. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution. When a public officer sues or is sued in his official capacity, he may be described as a party by his official title rather than by name, but the court may require his name to be added."

■ According to this rule Benny Odom automatically became a party to the suits upon the expiration of J. J. Jones's term of office. Defendants-intervenors reliance on *Haney v. Thomson*, 339 Mo. 505, 98 S.W.2d 639 (1936), and *Daiprai v. Moberly Fuel & Transfer Co.*, 359 Mo. 789, 223 S.W.2d 474 (1949) is misplaced. *Daiprai* holds that a substitution of a corporate defendant for three named parties who owned the corporation was an entire change of parties and would not be allowed after the statute of limitations had run. *Haney* holds that where new parties are brought in by amendment the statute of limitations continues to run in their favor until they are made parties. These cases do not apply to public officers as parties to suit.

■ Defendants-intervenors' final claim is that the trial court erred in ordering a levy reduction of two cents in the Jackson County Reorganized School District VII (a multi-county school district located in Cass and Jackson Counties). Some background information is needed in order to understand this issue. Cass County makes up only a small percentage of the total assessed valuation of the Jackson County Reorganized School District VII. In 1972 the assessed valuation in Cass County increased from $1,512,985 to $1,883,000.74 for a total increase in assessed valuation of $370,760 (stipulation). This increase of over 10% triggered the reduction provision of Section 137.073. By our ruling today when a 10% or more increase occurs in one of the counties making up a school district it is necessary for that district to reduce their tax levy so as to produce substantially the same amount of taxes as produced by the original levy.

The increase in assessed valuation in Cass County represents a gain in income to the school district of $19,279, hardly a small amount when compared to $78,675, the total amount of taxes produced by the original levy in Cass County. The school district argues this increase of $19,279 represented less than 1% of their total budget and therefore they complied with the "substantially the same" requirement in the statute. This obfuscates the real issue in this case because the statute does not concern itself with what percentage the increase in taxes from one county represents of the total school budget. The $19,279 increase in taxes from Cass County was certainly a "windfall" regardless of what percentage it represented of the total budget of the school district.

The statute requires a reduction in the original levy so as to produce substantially the same amount of taxes. The trial court found the Jackson County Reorganized School District VII failed to do this and as a result ordered the school district to reduce the original levy so as to comply with the statute. Although we do not agree with the amount of reduction ordered by the trial court we do not believe the trial court abused its discretion in ordering a reduction.

The court finds using the method endorsed above that the correct average levy of the districts should be $3.83 rather than $3.91 as found by the trial court.

In accordance with this finding we order up judgment against defendant Benny Odom as collector of revenue of Cass County, Missouri, and order him to pay the following amounts of money in refunds to each of the plaintiffs in each of the causes (cause numbers are those of the Cass County court) set out below:

(1) In Cause No. 33505, Missouri Pacific Railroad Company in the amount of $3,131.37.

(2) In Cause No. 33571, The Kansas City Southern Railway Company in the amount of $3,803.54.

(3) In Cause No. 33578, the St. Louis-San Francisco Railroad Company in the amount of $2,642.94.

(4) In Cause No. 33579, Panhandle Eastern Pipe Line Company in the amount of $4,976.75.

(5) In Cause No. 33580, Chicago-Rock Island & Pacific Railroad Company in the amount of $912.40.

(6) In Cause No. 33584, The Kansas City Power and Light Company in the amount of $13,486.25.

(7) In Cause No. 33591, United Telephone Company of Missouri in the amount of $1,699.91.

(8) In Cause No. 33592, Southwestern Bell Telephone Company in the amount of $10,367.14.

(9) In Cause No. 33593, Missouri Public Service Company in the amount of $13,980.60.

The judgments are reversed and the causes remanded with directions to enter judgments for plaintiffs for the amounts of taxes they paid under protest, as set forth supra.

All of the Judges concur.