UNION ELECTRIC COMPANY et al.,
Plaintiffs-Respondents,

v.

COLLECTOR OF REVENUE OF ST. FRANCOIS COUNTY, Defendant,

and

Farmington School District R-7 et al.,
Intervenors-Appellants.

No. 60161.

Supreme Court of Missouri,
En Banc.

March 13, 1978.

Geoffrey L. Pratte, Roberts & Pratte, Farmington, Hugh C. Roberts, Jr., Farmington, for intervenors-appellants.

Francis Duda, William H. Ferrell, Schlafly, Griesedieck, Ferrell & Toft, George Murray, St. Louis, Walter S. Drusch, Jr., Cape Girardeau, for plaintiffs-respondents.

HENLEY, Judge.

This appeal was transferred here by the Court of Appeals, St. Louis district, on the ground it involved the construction of revenue laws of this state. It involves four cases, consolidated for trial and final decision, in each of which the plaintiff sought to recover from the Collector of Revenue of St. Francois county (defendant) a portion of 1973 school taxes paid under protest. The plaintiffs are Union Electric Company, Missouri Pacific Railroad Company, Missouri-Illinois Railroad Company and Southwestern Bell Telephone Company (plaintiffs). Seven school districts and a junior college district intervened as defendants (intervenors-defendants).[1] The consolidated case, submitted on the pleadings and a stipulation of facts, resulted in a judgment in favor of each of the plaintiffs for the amount it sought. We affirm.

There are eleven school districts lying wholly or partially within St. Francois county. Of these, eight[2] are wholly within the county. They will be referred to as the single-county districts. The other three, North County R–1; DeSoto 73; and Sunrise R–9, lie partly within and partly without St. Francois county.[3] They will be re-

---

1. The intervenors-defendants are: Farmington School District R–7; North County School District R–1; Central School District R–3; Leadwood School District R–4; Bismark School District R–5; Fredericktown School District R–1; Potosi School District R–3; and Jefferson Junior College District.

2. Farmington R–7; Central R–3; Leadwood R–4; Bismark R–5; Fredericktown R–1; Potosi R–3; Knob Lick C–1; and Libertyville C–2.

3. North County R–1 (one of the intervenors-defendants) and DeSoto 73 lie partly within St. Francois county and Jefferson and Ste. Genevieve counties. Sunrise R–9 lies partly within St. Francois and Jefferson counties.

ferred to as the multi-county districts. Jefferson Junior College District lies in St. Francois, Jefferson and Ste. Genevieve counties. It will be referred to as the college district.

■ Each of the multi-county districts and the college district used the 1972 assessed value of personal property within their respective districts and estimates of their respective financial requirements to determine the original rate of levy[4] for 1973 taxes. After this rate of levy had been by each district determined, levied and certified to the county clerk of St. Francois county, the 1973 assessed value of personal property in Jefferson county was increased by 14.30% over the 1972 assessed value.

The rate of levy determined by each of the multi-county districts and the college district, based upon the 1972 assessed value of personal property in the whole district, would have produced taxes for each to meet their respective declared needs in the following amounts:

| | |
|---|---|
| North County R–1 | $ 586,775 |
| DeSoto 73 | 614,296 |
| Sunrise R–9 | 67,939 |
| Total: | $1,269,010 |
| College District | 1,036,771 |
| Grand Total: | $2,305,781 |

None of the multi-county districts or the college district revised and lowered its original rate of levy[5] after the 1973 increase in assessed value of property in Jefferson county so that, as lowered, it would produce in each district substantially the same amount of taxes as previously estimated would be produced by the original levy.

The taxes the original rate of levy produced for each district, based on the 1973 assessed value is as follows:

| | |
|---|---|
| North County R–1 | $ 635,351 |
| DeSoto 73 | 649,727 |
| Sunrise R–9 | 73,386 |
| Total: | $1,358,464 |
| College District | 1,134,669 |
| Grand Total: | $2,493,133 |

The above amounts demonstrate that the original rate of levy, applied to the 1973 assessed value, produced for the three multi-county districts $89,454 more than was estimated to be required to meet their needs and that there was produced for the college district $97,898 more than was estimated to be required to meet its needs.

The evidence is that based on the 1973 assessed value of property within each of the four districts the revised (lower) rate of levy indicated below for each district would have produced for each substantially the same amount of taxes as would have been produced by the original rate of levy.

North County R–1:

| 1973 Valuation | Revised Rate | Tax Production |
|---|---|---|
| $14,439,815 | $4.07 | $587,700 |

DeSoto 73:

| 1973 Valuation | Revised Rate | Tax Production |
|---|---|---|
| $13,152,374 | $4.68 | $615,531 |

Sunrise R–9:

| 1973 Valuation | Revised Rate | Tax Production |
|---|---|---|
| $1,497,685 | $4.54 | $67,994 |

Jefferson Junior College District:

| 1973 Valuation | Revised Rate | Tax Production |
|---|---|---|
| $226,933,827 | $0.46 | $1,043,895 |

The conclusion is inescapable that in view of this evidence each plaintiff is entitled to recover the amount of taxes it paid under protest if these districts were required by law to lower their respective rates of levy to those designated above as revised rates.

The plaintiffs' suit is based upon the claim that each of the multi-county districts and the college district failed to comply

---

4. The rate of levy upon the distributable property of plaintiffs for 1973, based upon the 1972 assessed value, was $4.26 per $100.00 valuation. The "distributable property" of public utilities and railroad companies is, in general, their operating properties within each county. The taxes levied upon such properties and paid to a county for school purposes is based upon an average rate. Briefly, the average rate of levy for school purposes is determined by adding together the local rates of the several school districts in the county and dividing that sum by the whole number of school districts levying a tax for school purposes. The taxes produced by this rate of levy and paid to the county is apportioned among its school districts in proportion to their respective enumeration returns. Sections 151.150 and 153.030, RSMo 1969.

5. The eight single-county school districts filed a correct levy.

with the requirement of § 137.073.[6] In summary, that section requires that when the assessed value of property has increased by 10% or more over the valuation of the previous year after the rate of levy has been determined, levied and certified to the county clerk, the taxing authority shall revise and lower the rate so that it will produce substantially the same amount of taxes as previously estimated would be produced by the original levy.

This court said in *Missouri Pacific Railroad Company v. Kuehle*, 482 S.W.2d 505, 509[4] (Mo.1972) that the purpose of § 137.073 "is obviously to prevent 'windfalls' in school taxes to the school districts merely because the assessed valuation of the real [or personal] property in a county increases." See also *Missouri Pacific Railroad Company v. Jones*, 544 S.W.2d 541, 546 (Mo. 1976).

Intervenors-defendants contend the requirement of § 137.073 that the rate of levy be reduced when the assessed value of property is thereafter increased 10% or more within a county, only a small area of which is within the school district, is not applicable district-wide to a multi-county district; that the statute was intended to require revision in and application of a lower rate of levy only in that county where the increase of 10% or more in value occurred, not in any county in which there was no such increase.

This court decided the basic question this contention presents in *Missouri Pacific Railroad Company v. Jones*, supra. The court said (544 S.W.2d at 547) " * * * that § 137.073 requires the school district to take into consideration the increased assessed valuation of all the property within the school district. Specifically, the school district must include in its base the increases in assessed valuation in all of the counties in which the school district lies and not just the county where the increase exceeds 10%. This method will produce the sum of money which the school district has declared that it needs for the ensuing year." See also *St. Louis-Southwestern Railway Company v. Cooper*, 496 S.W.2d 836, 840[1] (Mo.1973).

■ Intervenors-defendants also contend that an increase in the assessed value of property produced by the addition of new property on the tax rolls of the DeSoto district through its annexation of part of another district is not the type of "increase" intended by § 137.073.

In *Missouri Pacific Railroad Company v. Campbell*, 502 S.W.2d 354, 358[5] (Mo.1973) the court was presented with the question whether an increase of 10% or more in assessed value of property in a county produced by improvements to industrial complexes and construction of new residences and business buildings since the original levy had been made and certified was an increase occurring "either by an order of the state tax commission or by other ac-

**6.** References to sections of the statutes are to RSMo 1969.

Section 137.073 is as follows:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten per cent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

tion" within the meaning of § 137.073. We held (l.c. 358), after stating reasons for the conclusion, that "[i]t is our view that the legislature intended that the rate be reduced whenever the assessed valuation is increased by 10 percent or more over the prior year's valuation, after the school districts have estimated their needs and fixed the rate of levy. *The manner in which the increase occurs would seem immaterial in effectuating the legislative intent.*" (emphasis added). The increase in assessed value of the DeSoto district effected by annexation after the original levy had been made and certified was an increase "by other action" within the meaning of the statute.

The judgment is affirmed.

All concur.