CONTINENTAL TELEPHONE COMPA-
NY of Missouri, Respondent,

v.

William H. BOUSE et al., Crawford
County R–II Schools, Appellants.

No. 10617.

Missouri Court of Appeals,
Southern District.

April 3, 1979.

Rehearing Denied April 23, 1979.

Walter D. McQuie, Jr., McQuie & Deiter, Montgomery City, for appellants.

Gary A. Love, Lilley, Cowan & Love, Springfield, for respondent.

FLANIGAN, Chief Judge.

Plaintiff Continental Telephone Company of Missouri, a regulated utility, brought this action to recover a portion of the 1975 school taxes which it paid defendant William H. Bouse, the Crawford County collector. The portion was paid under protest. See § 139.031.[1] A school district, Crawford County R–II, intervened in the action and opposed plaintiff's claim. The case was submitted to the trial court on stipulated facts. The trial court found in favor of Continental and awarded it the sum of $1,047.56. Intervenor R–II appeals.[2]

Appellant R–II is one of nine school districts located wholly or partially in Crawford County. One of those school districts, Steelville R–3, is a "single-county district" in that it is located wholly within Crawford County. The other eight districts (including appellant R–II) are "multi-county districts" in that each of them lies partly in

1. References to statutes are to RSMo 1969, V.A.M.S.

2. The appeal was filed originally in the Supreme Court of Missouri but that court entered

an order transferring the cause "to the Missouri Court of Appeals, [Southern] District, in which jurisdiction is vested."

Crawford County and partly in one or more other counties.

In 1975 the assessed valuation of real property in Crawford County increased by 15.16 percent over the prior year's valuation and the assessed valuation of personal property in Crawford County increased by 21.16 percent over the prior year's valuation. As a result § 137.073, set forth marginally,[3] was brought into play.

At the time the instant action was tried, the supreme court had not yet handed down its opinion in *Missouri Pac. R. Co. v. Jones,* 544 S.W.2d 541 (Mo.1976), in which the court spelled out the steps which a multi-county school district must take in order to comply with § 137.073. The court held that a multi-county school district must take into consideration "the increased assessed valuation of all the property within the school district. Specifically, the school district must include in its base the increases in assessed valuation in all of the counties in which the school district lies and not just the county where the increase exceeds 10 percent. This method will produce the sum of money which the school district has declared that it needs for the ensuing year." *Missouri Pac. R. Co. v. Jones,* supra, at 547.

The taxes involved here are those which were levied against the "distributable property" of Continental.

"The 'distributable property' of regulated utilities is assessed on a statewide basis by the state tax commission pursuant to Sec-tion 151.060. That statewide assessment is then allocated by the state tax commission among the counties in accordance with Section 151.080. The local school taxes were levied against the 'distributable property' of plaintiffs pursuant to Section 151.150, which requires that the separate levies of each school district which lies wholly or partly within a county be averaged to arrive at an average rate of school levy within the county. This average rate of school levy was then charged against the portion of each utility's 'distributable property' allocated to the county." *Missouri Pac. R. Co. v. Jones,* supra, at 542–43.

The trial court found that the average rate of school levy "which should have been applied for school taxes in Crawford County in the year 1975" was $3.06 per $100 of assessed valuation. The trial court further found that the average rate of school levy which in fact had been applied against the portion of Continental's distributable property allocated to Crawford County was $3.20. By appropriate calculations, the accuracy of which appellant R–II does not question, the trial court found that Continental was entitled to recover $1,047.56, which was the difference between the amount it paid under the $3.20 average rate of levy and the amount it owed under the $3.06 average rate.

On this appeal appellant R–II's sole "point relied on" is that the trial court erred in making the award to Continental

---

3. § 137.073. *Readjustment of prior levy when county assessment increased ten percent.* —Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds.

"because the $1,039,653 taxes produced from Crawford County was substantially the same as the $991,897 estimated to be needed therefrom within the meaning of § 137.073 and the school districts, thus, fully complied with the statute, an alleged violation of which was the basis of this suit, when six of the nine school districts in Crawford County revised their rates of levy after a more than 10 percent increase in Crawford County real and personal assessed valuations was made."

Each of the nine school districts had adopted an original rate of levy for 1975 based upon the 1974 assessed valuation of property in the district and estimates of the district's financial requirements. The original rates were certified to the county clerk of Crawford County. The original rates would have generated tax revenue from Crawford County in the total amount of $991,897 for all of the districts. In view of the increase, in 1975, in assessed valuation in Crawford County, the taxes which were actually produced from Crawford County for all of the districts amounted to $1,039,-653. Six of the nine districts had lowered their original rates of levy and the other three (Sullivan C–2, Strain-Japan R–16 and Northwood R–4) made no change.

Thus, appellant R–II, in its point, makes a comparison between the amount all of the school districts originally estimated they would receive *from Crawford County* ($991,897) and the amount which they in fact received from that county ($1,039,653).

■ In view of the increase in assessed valuation in Crawford County in 1975, § 137.073 was "triggered" with respect to all nine school districts. *Each*[4] of them was under a duty to comply with the statute and to do so in the manner spelled out in *Missouri Pac. R. Co. v. Jones,* supra.

■ Section 137.073 required the school districts to "immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy."[5]

As pointed out in *Southwestern Bell Telephone Co. v. Hogg,* 569 S.W.2d 195, 199 (Mo. banc 1978) there are three factors in taxation: (1) assessed valuation, (2) amount of money to be raised, (3) rate of levy. The school district, the court said, "must have the assessed valuation and the aggregate amount of money to be raised before they can fix the rate of levy. The rate of levy is always the last factor to be determined, and to be obtained as a quotient, the assessed valuation being the divisor and the amount of taxes the dividend." The court also said:

"All that is required is for the school districts to make the mathematical computation using the known factors of revenue need and new increased valuation to arrive at the rate which will produce the needed revenue when applied to the assessed valuation. The result will not be the exact amount of estimated need from taxation but it *can and should be every close to it.*

4. In *Missouri Pac. R. Co. v. Jones,* 544 S.W.2d 541, 549 (Mo.1976) an increase in assessed valuation in Cass County "triggered the reduction provision of Section 137.073." A multi-county school district in that case argued that the increase in assessed valuation in Cass County had little effect upon its total budget—an effect of less than 1 percent. The court rejected the argument and said that "the statute does not concern itself with what percentage the increase in taxes from one county represents of the total school budget."

5. Section 137.073, with respect to a school district, contains this language:
"Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previ-

ously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year."
The formula to be utilized in complying with that portion of the statute is set forth in *Union Elec. Co. v. Toulouse,* 572 S.W.2d 167 (Mo. banc 1978).
In the case at bar the loss of "state school moneys" has been taken into consideration in calculating the "declared needs" of the nine school districts and appellant R–II has not questioned the mathematical accuracy of those calculations.

"In *St. Louis-Southwestern R. Co. v. Cooper,* 496 S.W.2d 836 (Mo.1973), the court noted that 'substantially the same' is synonymous with 'practically', 'almost', 'essentially', and 'virtually' the same." *Hogg,* supra, at 201. (Emphasis added.)

The "declared needs" of the respective school districts (that is, the amount each district considered it needed and which it used in computing its original rate of levy based on the 1974 assessed valuation) were as follows:

| | |
|---|---|
| Sullivan C–2 | $539,518 |
| Bourbon R–1 | 265,083 |
| Crawford R–II | 395,706 |
| Steelville R–3 | 229,435 |
| Viburnum C–4 | 595,649 |
| Owensville R–2 | 646,019 |
| St. James R–1 | 321,879 |
| Strain-Japan R–16 | 43,260 |
| Northwood R–4 | 110,144 |

The record shows that, based on the 1975 district-wide assessed valuations within each of the nine districts, the revised (lower) rate of levy indicated below for each district would have produced for each substantially the same amount of taxes as would be produced by the original rate of levy.[6]

| School District | 1975 Valuation | Revised Rate (per $100 valuation) | Tax Production |
|---|---|---|---|
| Sullivan C–2 | $14,000,540 | $3.85 | $539,021 |
| Bourbon R–1 | 8,138,017 | 3.26 | 265,299 |
| Crawford R–II | 12,539,440 | 3.15 | 394,992 |
| Steelville R–3 | 8,306,290 | 2.77 | 230,084 |
| Viburnum C–4 | 27,088,937 | 2.20 | 595,956 |
| Owensville R–2 | 20,639,245 | 3.13 | 647,573 |
| St. James R–1 | 10,967,585 | 2.94 | 322,447 |
| Strain-Japan R–16 | 1,416,128 | 3.06 | 43,333 |
| Northwood R–4 | 3,791,835 | 2.91 | 110,342 |

It will be observed that under the foregoing computations the taxes produced under the revised rate for seven of the districts would exceed their respective "declared needs." In two of the districts (Sullivan C–2 and Crawford R–II) the taxes produced would be slightly less than the respective declared need but the fact is that Sullivan C–2 set its original rate at $3.85 and did not revise it and Crawford R–II revised its original rate downward to $3.15. Each of those two school districts apparently felt that its respective rate was adequate even though it yielded slightly below its anticipated need.

If the revised rates contained in the foregoing table were used, the average rate (total of the revised rates divided by nine, the number of school districts) is $3.03.

Although plaintiff Continental suggested to the trial court revised rates for each of the nine districts, the trial court did not, in its judgment, utilize a specific rate for a specific district, nor was the trial court asked to do so. The trial court did determine that the *average* rate of levy should have been $3.06.

Continental's petition had suggested an average rate of $3.04 but prior to final submission of the case to the trial court Continental suggested that the court determine the average rate to be $3.06. Thus Continental received all of the relief which it had requested. If $3.03 had been applied to Continental's "distributable property," Continental would have been entitled to a refund slightly higher than the $1,047.56 which the trial court awarded. Manifestly appellant R–II was not prejudiced by the action of the trial court for the reason that the average rate of levy of $3.06 would

6. For a similar computation see *Union Elec. Co. v. Collector of Rev., etc.,* 562 S.W.2d 370 (Mo. banc 1978).

result in more tax revenue to appellant R–II than would $3.03.

The figures which appellant R–II cites in its "point relied on" are confined to Crawford County and ignore the fact that the multi-county school districts, in order to comply with § 137.073, were required to take into consideration the valuation increases in all of the counties forming a part of the respective district and not merely the increase in Crawford County. Appellant R–II's "point relied on" has no merit.

The judgment is affirmed.

HOGAN and BILLINGS, JJ., concur.